IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PADCOM, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civ. No. 03-983-SLR |
| | ) | |
| NETMOTION WIRELESS, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 8th day of March, 2006, having reviewed the papers submitted by the parties;

IT IS ORDERED that plaintiff's motion for reconsideration (D.I. 456) is granted and the various requests for clarification are addressed as follows:

1. After examining the correct exhibit 23 to D.I. 299, the court finds that defendants raise a genuine issue of material fact regarding the: "availability code segment," "determining code segment," "switching code segment" and "remaining connected to the network after switching" limitations of claims 39 and 44 of the '405 patent; "transmission occurs while switching," "monitors to determine availability" and "switching between data packets" limitations of claim 49 of the '324 patent; and "monitoring" and "switches" limitations of claim 6 of the '920

patent.[1]

2. The elements of the tort of unfair competition are: (1) a reasonable expectancy by plaintiff of entering into a valid business relationship; (2) a wrongful interference by defendant; (3) amounting to the defeat of plaintiff's legitimate expectancy; and (4) causing plaintiff harm. (D.I. 445) As a matter of law, plaintiff must show a wrongful interference. The court has declined to take a broad approach to the tort. Therefore, plaintiff must prove a specific alleged act that is a wrongful interference, as opposed to a series of events which, individually, do not amount to unfair competition. The court will not allow plaintiff to supplement the record when presenting the issues to the jury. As a result of finding certain acts insufficient, as a matter of law, to support the tort, these acts are no longer relevant to the case. Such acts, as set out in the memorandum opinion, include: (1) the hiring of Matt Olszewski; (2) asking Matt Olszewski for input regarding certain customers of plaintiff; (3) asking Matt Olszewski about an employee of plaintiff, Tony Celia; (4) soliciting plaintiff's customers; (5) using truthful comparative advertising; and (6) defendant's

---

[1] Summary judgment remains granted for plaintiff regarding only the "computer readable medium," "dissimilar networks" and "packet size code segment" limitations of claims 39 and 44 of the '405 patent and the "computer readable medium" and "transmitting over first and second networks" limitations of claim 49 of the '324 patent.

2

responses to the lawsuit made to potential customers indicating that the lawsuit is without merit. The court also found that plaintiff did not raise a genuine issue of material fact regarding whether misrepresentations were made to plaintiff's customers regarding plaintiff's product and, therefore, defendant's summary judgment motion was granted. The remaining alleged conduct supporting a claim of common law unfair competition include misleading potential customers regarding the financial stability of plaintiff and the buy-back program.

3. The court's construction for the "dissimilar networks" limitation is supported by the '324 patent specification. The specification of the '324 patent includes an exemplary list of dissimilar networks,[2] some of which are IP based (CDPD, GSM, PCS) and some of which are non-IP based (private voice radio, RAM

---

[2]The specification states:

> The following non-limiting list includes networks that may be interfaced to the Router 200 by the Network Interfaces 214A-D: private voice radio including conventional and trunked radios (e.g., using MDC 54), Cellular Digital Packet Data (CDPD), Spread Spectrum (e.g., direct sequence and channel-hop), GSM, GPS receiver, satellite transponder, RDI (Ericsson) interface, AMPS, RAM Mobile (Mobitex), RS232, RS485, Angel (AT&T), Asynchronous Transfer Method (ATM), Integrated Services Digital Network (ISDN), public switched telephone network (PSTN (POTS) telephone network), Ethernet, Ardis, Personal Communications Services (PCS), and any other network which is either transparent or operates using a specific protocol.

'324 patent, col. 33, ll. 14-31.

Mobile). ('324 patent, col. 33, ll. 14-31; D.I. 261 at 19) All of the networks listed are dissimilar at the data link layer, but only some are different at the network layer. (D.I. 261 at 19; D.I. 262 at ¶¶ 89-90) For example, RAM and CDPD are different at the network layer, while CDPD and GSM are the same at the network layer. (D.I. 261 at 19) Furthermore, the specification recognizes that the listed dissimilar networks may additionally require protocol translation, necessary in the situation where differences exist between the network layers.[3] (Id.) The specification of the '324 patent discusses use of "gateways which are devices that interconnect two or more dissimilar networks." ('324 patent, col. 2, ll. 44-46) However, in the invention, "[d]issimilar networks may be connected by gateways." ('324 patent, col. 2, ll. 44-45) If the court adopts a narrow construction of "dissimilar networks" - requiring the network layers always be different - the invention would always need gateways, which is not what is disclosed or claimed. Finally, the '324 patent Abstract states, "[t]he router communicates over

---

[3]The specification states:

> The specific protocols to the above-listed networks are implemented in the Network Interfaces 214A-D. These protocols may be very different, and therefore incompatible with each other. Additionally, a translation device may be provided in each Network Interface 214 to translate between IP and the particular network protocol.

'324 patent, col. 33, ll. 32-38.

4

a plurality of incompatible networks[4] and is capable of using a variety of different protocols." Because networks that differ at the network layer have different protocols, if "dissimilar" were construed to mean different at the network layer, the second half of this sentence would be redundant. "'[W]ords or expressions of manifest exclusion' or 'explicit' disclaimers in the specification are necessary to disavow claim scope." Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005). The '324 patent specification contains no such exclusion of claim scope and, therefore, the court finds no reason to limit the scope of the term "dissimilar networks."

4. The term "dynamically routing data" was construed to mean "receiving data, selecting the next hop for the data in accordance with network selection criteria, and transmitting the data to the next hop." The summary judgment opinion incorporating a network layer limitation into the term was incorrect. (D.I. 450 at 12-13) However, as a result of the contradicting expert reports regarding whether *Mobility* or *Windows* performs the functions required by the claim, summary judgment remains denied.

5. The construction of the terms "the transmission occurs while the router switches," "a transmission occurs while

---

[4]The parties have agreed that "incompatible networks" has the same meaning as "dissimilar networks."

switching, "the transmission occurs while switching," "switching during a transmission," and "switching during a transmission" is corrected to remove the "router" limitation. As a result, the correct construction of the term is: "Directing transmission of data or data packets from one network to another network, without disrupting or reinitiating the transmission, and sending the data or data packets over only one of the networks at a time."

6. The video of the BARWAN prior art is not relevant and not admissible.

7. The testimony of plaintiff's lead counsel, Mr. Greenblum, is excluded.

_____<br>United States District Judge